UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


GINA A. PLASSE                          :
                                        :
            v.                          :        C.A. No. 08-357S
                                        :
MICHAEL J. ASTRUE                       :
Commissioner of the Social Security     :
Administration                          :


## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge


        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint

on September 22, 2008 seeking to reverse the decision of the Commissioner.  On May 29, 2009,

Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 7).  On June

30, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the

Commissioner.  (Document No. 8).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the legal

memoranda filed by the parties and independent legal research, I find that there is substantial

evidence in this record to support the Commissioner's decision and findings that Plaintiff is not

disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED

and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED.

## I.        PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 6, 2005 alleging disability since February 9, 2005.  (Tr. 60-62).   Plaintiff is insured for disability benefits through at least December 31, 2010. (Tr. 21, 65).  The application was denied initially (Tr. 57-59) and on reconsideration.  (Tr. 54-56). Plaintiff requested an administrative hearing.  (Tr. 53).  On June 14, 2007, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified.  (Tr. 356-403).  The ALJ issued a decision unfavorable to Plaintiff on July 24, 2007. (Tr. 16-28).  The Appeals Council denied Plaintiff's request for review on July 25, 2008.  (Tr. 5-7).  A timely appeal was then filed with this Court.

## II.       THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by failing to find her chronic fatigue syndrome to be a "severe" impairment as defined in 20 C.F.R. § 404.1520(c).  She also argues that the ALJ's residual functional capacity ("RFC") finding is not supported by the record because he gave insufficient weight to treating source opinions.  Finally, Plaintiff contends that the ALJ erred in his credibility findings.

The Commissioner disputes Plaintiff's claims and argues that the ALJ's Step 2 and RFC findings are supported by substantial evidence.  He also counters that the ALJ committed no error in his adverse assessment of Plaintiff's credibility.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.   Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)  Treatment, other than medication, for relief of pain;

(5)  Functional restrictions; and

(6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was forty-four years old on the date of the ALJ's decision.  (Tr. 60).  Plaintiff completed high school (Tr. 123) and her previous work experience is limited to working as a secretary/bookkeeper in a family business for nearly twenty years. (Tr. 118, 376).  Plaintiff alleges disability due to spinal meningitis, an immune deficiency disorder, a thyroid condition and allergies. (Tr. 117, 361).

On February 14, 2005, Dr. Paul Santoro noted that Plaintiff was experiencing neck and back stiffness, a severe headache and blurred vision. (Tr. 305).  Doctor Santoro concluded that Plaintiff

might have meningitis, so he referred her to the Emergency Room.  Id.  On presentation to the

Emergency Room, the attending physician noted that while Plaintiff's neck was stiff, her hamstrings

were tender, and she was in moderate distress; her extremities were non-tender with normal range

of motion, and her Brudzinski's sign (a possible indicator of meningitis) was negative.  (Tr. 161,

163).  Plaintiff was subsequently admitted to the Hospital for treatment of viral meningitis.  (Tr.

161).

On March 3, 2005, Dr. Santoro observed that Plaintiff was in no acute distress, her neck was

supple, she had no peripheral edema or obvious musculoskeletal abnormalities, her range of motion

was full, and her back, straight leg raising, motor strength and gait were normal.  (Tr. 306).  Doctor

Santoro also found that Plaintiff was alert and oriented to three spheres, she was not experiencing

any suicidal ideation, and her mood, affect, judgment and memory were normal.  Id.  Dr. Santoro

made similar findings at Plaintiff's appointment on March 29, 2005.  (Tr. 311).  Two days later,

Plaintiff underwent a lumbar spine MRI, and the test revealed that she had very mild annular bulges

at L4-5 and L5-S1 with mild degenerative changes at the facet joints at those levels.  (Tr. 172-173).

On April 6, 2005, Dr. James Crowley noted that Plaintiff's immune studies revealed that she

had a low immunoglobulin G ("IgG") level, borderline immunoglobulin A ("IgA") level and no

response to a Pneumovax vaccination.  (Tr. 228). On examination, Doctor Crowley observed that

while Plaintiff had mild axillary and cervical adenopathy bilaterally; she was in no acute distress,

she did not exhibit any musculoskeletal abnormalities, she was oriented to three spheres and she was

not experiencing any depression, anxiety or agitation.  (Tr. 228-229).

Doctor Santoro found on April 28, 2005, that Plaintiff was in no acute distress, her range of

motion was full, she had no obvious musculoskeletal abnormalities, and her back, straight leg

raising, motor strength and gait were normal. (Tr. 313). Dr. Santoro also found that Plaintiff was alert and oriented to three spheres, she was not experiencing any suicidal ideation, and her mood, affect, judgment and memory were normal. Id.

On May 18, 2005, Doctor Crowley found that Plaintiff's physical examination did not reveal any "evidence of heme/immune/lymph disease." (Tr. 238-239). Doctor Crowley also determined that Plaintiff's back was not tender, and her neurological examination, including her gait, was normal. (Tr. 239). Doctor Crowley concluded that Plaintiff's problems were stable on her current management protocol. Id. Doctor Crowley examined Plaintiff again on September 8, 2005, and his findings were unchanged from her May 2005 visit. (See Tr. 239, 241-242).

State of Rhode Island Disability Determination Services referred Plaintiff to Dr. Ronald Paolino, who conducted a psychiatric evaluation on September 17, 2005. (Tr. 199). Doctor Paolino initially noted that Plaintiff drove herself to the appointment, her eye contact was good, her facial expressions and speech were appropriate, and she reported that her only complaint was "the constant fatigue resulting from her spinal meningitis." Id. Doctor Paolino also noted that Plaintiff had no history of psychiatric treatment or use of psychotropic medication. (Tr. 200). Doctor Paolino then observed that Plaintiff was not withdrawn or agitated, there was no evidence of an altered level of consciousness or motor retardation or abnormalities, she was oriented to four spheres, and she denied any hallucinations, obsessive/compulsive thinking, suicidal ideation, mania or panic attacks. (Tr. 200-201). Doctor Paolino further found that Plaintiff's affect was depressed, she had difficulty completing serial sevens, and she was only able to interpret one of three proverbs; however, she was able to recall six digits forward and back and name the Presidents of the United States in reverse order back to President Ford. (Tr. 200). Dr. Paolino added that Plaintiff was close to her immediate

family, she had fifteen friends, she got along with her neighbors and she had no problems with authority figures. (Tr. 201).

Dr. Crowley conducted examinations on December 1, 2005 and January 12, 2006, and his objective findings remained unchanged.  (See Tr. 247-248, 260-261).  At examinations between October 16, 2006 and January 3, 2007, Dr. Santoro found that Plaintiff was in no acute distress, she had no obvious musculoskeletal abnormalities, her range of motion was full, and her back, straight leg raising, motor strength and gait were normal.  (Tr. 314-315, 317, 319).  Doctor Santoro also observed that Plaintiff was alert and oriented to three spheres, and her mood, affect and judgment were normal.  Id.  Doctor Crowley saw Plaintiff again on January 30, 2007, and his objective findings remained unchanged.  (Tr. 261, 332).

Plaintiff's records were also reviewed on September 28, 2005 by a non-examining psychologist.  (Ex. 15F).  Dr. Clifford Gordon concluded that Plaintiff could understand and remember data presented to her in the workplace, complete basic three- to four-step tasks in two-hour blocks of time over an eight-hour day, relate adequately to coworkers, the public and supervisors, and adapt to ordinary changes in the work environment.  (Tr. 197).

### A.    The ALJ Did Not Err at Step 2 in Failing to Find Plaintiff's Chronic Fatigue Syndrome to be a Severe Impairment

At Step 2, the ALJ determined that Plaintiff's immune system deficiency and depression were "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c).  (Tr. 21).  Under 20 C.F.R. § 404.1508, a physical impairment must be "established by medical evidence consisting of signs, symptoms, and laboratory findings...."  In other words, it must be medically determinable. In making his Step 2 finding, the ALJ in this case noted that, on March 27, 2007, Doctor Crowley, a treating physician, opined that Plaintiff suffered "recurrent viral infections" resulting in "chronic

fevers, malaise and fatigue," and that Plaintiff met a Listing for an immune system disorder, i.e., Listing 14.07 immunoglobulin deficiency syndrome or deficiency of cell-mediated immunity. (Tr. 21, 339). The ALJ also determined that Plaintiff's thyroid condition, allergies and asthma, were "non-severe" impairments under 20 C.F.R. § 404.1520(c). (Tr. 22).

Plaintiff faults the ALJ for not expressly evaluating the severity of her chronic fatigue syndrome ("CFS") at Step 2. While Plaintiff accurately points out that the ALJ did not specifically discuss her CFS at Step 2, such failure does not constitute error on this record. In addition, even if it were error, it would be harmless error, as the record contains medical support for the ALJ's implicit conclusion that Plaintiff's CFS was a non-severe impairment. (See Tr. 177, 224).

Although there are references in the record to a diagnosis of CFS, the record also contains explicit medical findings attributing Plaintiff's symptoms, including fatigue, to an immune system disorder. (See, e.g., Tr. 339). In fact, on October 4, 2002, Doctor Rogoff, a treating physician, attributed Plaintiff's fatigue to a number of possible causes including immunological issues and noted that CFS "may be a possibility if all else is negative." (Tr. 267) (emphasis added).

The ALJ also cannot be faulted for his Step 2 evaluation since neither Plaintiff nor her attorney at the ALJ level portrayed this as a CFS case. In her initial DIB application, Plaintiff did not mention CFS and listed her conditions as spinal meningitis, immune-deficiency, thyroid condition and severe allergies. (Tr. 117). She told Doctor Paolino on September 18, 2005 that she had "constant fatigue and immune deficiency from spinal meningitis." (Tr. 199). At the ALJ hearing, Plaintiff's counsel made an opening statement and told the ALJ that he "believe[d] the medical records are significant for showing that [Plaintiff] has an immunological illness" and that this case centered on the credibility of Plaintiff's statements regarding her symptoms and limitations.

(Tr. 361).[1]  He did not mention CFS in his opening.  Further, Plaintiff herself did not mention CFS when asked by the ALJ about her disabling conditions and generally referenced fatigue and susceptibility to illness. (Tr. 377-379, 388-389, 394).  Plaintiff's testimony was also consistent with Doctor Crowley's March 27, 2007 report in which he attributed Plaintiff's symptoms, including fatigue, to her recurrent viral infections and immunological disorder.  (Tr. 339).  One of the hallmarks of a CFS diagnosis is "the presence of clinically evaluated, persistent or relapsing chronic fatigue that...cannot be explained by another physical or mental disorder." S.S.R. 99-2p.  See also Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (noting that CFS is diagnosed partially through a process of elimination).  Here, since Plaintiff, her attorney and treating sources attributed her fatigue to an immunity disorder, the ALJ cannot be faulted for following that lead in his Step 2 analysis.

Plaintiff also argues that the ALJ's Step 2 error led to an erroneous RFC finding.  The ALJ determined that Plaintiff was able to perform a wide range of sedentary work subject to certain environmental limitations and a moderate limitation in her ability to maintain attention and concentration.  (Tr. 23).  Since the Court finds no basis for Plaintiff's challenge to the ALJ's Step 2 finding, her derivative RFC challenge likewise fails.  In addition, the ALJ's RFC finding is supported by the record including testimony from the ME, Doctor Pella, that Plaintiff could perform activity at the sedentary level.  (Tr. 365).  The record also includes the opinions of the state agency physicians (Exs. 13F and 20F) that Plaintiff's medical impairments did not meet the Step 2 severity level.  Finally, as discussed below, the ALJ made a supported finding that Plaintiff's allegations were not entirely credible.  (Tr. 25).  Plaintiff has shown no error.

**B.      The ALJ's Credibility Finding is Supported by the Record**

---

[1] The ALJ ultimately found that Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms was "not entirely credible."  (Tr. 25).

Plaintiff contends that the ALJ's Step 2 error also contributed to an error in assessing her credibility. However, as discussed above, the Court has rejected Plaintiff's Step 2 argument. Additionally, Plaintiff has shown no error in the ALJ's application of the <u>Avery</u> standard to her complaints of disabling fatigue. A review of the record and the ALJ's decision reveals that it is supported by substantial evidence and thus is entitled to deference.

The ALJ determined that Plaintiff's immune system deficiency and depression could reasonably be expected to produce symptoms of the type alleged, but that Plaintiff's statements as to the intensity, persistence and limiting effects of such symptoms were not entirely credible. <u>Id.</u> The ALJ identified certain inconsistencies between her presentation and the underlying medical and employment record. (Tr. 26). For instance, Plaintiff reportedly stopped working in early 2005 due to disabling fatigue after a bout of meningitis. However, the ALJ accurately noted in his decision that Plaintiff complained to Doctor Rogoff in 2002 about a history of fatigue that left her with "little energy to get out of the house and do anything." (Tr. 266-267). Yet, as noted by the ALJ, the record indicates that Plaintiff was able to work full-time for over two years thereafter with significant earnings in relation to her work history. (Tr. 68). The ALJ stated that he pointed out this inconsistency, not to call Plaintiff's fatigue into question, but to note that Plaintiff worked at significant levels during a period when she complained of the same symptoms she now describes as disabling. (Tr. 26).

Plaintiff argues that the ALJ's finding on this issue is based on "assumptions and speculation," because the ALJ did not ask her if her employer (also Plaintiff's father) made allowances for her condition during the period that he employed her. Plaintiff suggests that "[p]erhaps he made allowances for her disability. <u>Perhaps</u> he allowed her to lie down or take

frequent breaks or take extra days off."  (Document No. 7 at p. 16) (emphasis added).  Plaintiff, however, has failed to cite any specific evidence that contradicts the ALJ's finding, and instead relies on unsupported arguments about what may have happened.  Id.  She never testified to or otherwise disclosed these possible "allowances."  There is simply no basis in the record for the ALJ to surmise that Plaintiff may have been disabled prior to her February 9, 2005 claimed date of onset and accommodated by her employer.  In fact, Plaintiff represented during the application process that she stopped working at that time because she "felt like [she] had the flu; left work and became deathly ill within a few hours."  (Tr. 118).  At the ALJ hearing, Plaintiff confirmed that she stopped work for her father on February 9, 2005 and "he just closed when I got sick."  (Tr. 377).  Although the ALJ has a duty to fully and fairly develop the record, the evidence in this case would not reasonably lead a fact-finder to question Plaintiff's claimed disability onset date and her record of full-time employment through such date.

While reasonable minds could differ as to the interpretation of this evidence, the issue is not whether this Court would have reached the same credibility evaluation as did the ALJ.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1 (1st Cir. 1987)).  Rather, the issue is whether the ALJ's conclusions have adequate support in the record.  Since they do, there is no basis upon which to reject them in this case.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's

Motion to  Reverse the Decision of the Commissioner (Document No. 7) be DENIED.  I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 14, 2009